Ekwan E. Rhow – State Bar No. 174604
erhow@birdmarella.com
Timothy B. Yoo - State Bar No. 254332
tyoo@birdmarella.com
Richard J. Jung - State Bar No. 353917
rjung@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiff Incuvate, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INCUVATE, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>PENUMBRA, INC.,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Incuvate, LLC ("Plaintiff" or "Incuvate"), by and through its undersigned attorneys, hereby alleges against Defendant Penumbra, Inc. ("Defendant" or "Penumbra") as follows:

## INTRODUCTION

1. This is an action for patent infringement against Penumbra for infringement of United States Patent Nos. 9,248,221 (the "'221 Patent"), 9,895,473 (the "'473 Patent"), 10,603,415 (the "'415 Patent"), 11,678,896 (the "'896 Patent"), and 12,539,127 (the "'127 Patent") (collectively, the "Asserted Patents").

2. The Asserted Patents generally relate to aspiration monitoring systems and methods for real-time monitoring of catheter-based thrombectomy procedures. Incuvate is the sole legal owner of each of the Asserted Patents and holds all rights necessary to enforce the Asserted Patents in this action and recover damages for their infringement.

3. This action arises out of Penumbra's past and current unauthorized manufacture, use, sale, offer for sale, and/or import within the United States of its newly cleared and launched THUNDERBOLT system (including the Penumbra ENGINE vacuum source, the THUNDERBOLT tubing/module, and associated RED Reperfusion Catheters, such as the RED 62, RED 68, RED 72 Silver Label and Red 72 Silver Label with "SENDit" Technology) (collectively, the "Accused Products").

4. This case concerns Incuvate's pioneering intelligent aspiration technology, which represents a fundamental advance in the field of aspiration thrombectomy. The Asserted Patents disclose novel systems and methods that use pressure sensor data, a built-in microprocessor, and stored pressure thresholds/differentials to differentiate between thrombus and blood flow in real time, communicating that differentiation to the operator through visual and audible cues. These breakthroughs enable aspiration thrombectomy to be performed with

real-time feedback designed to reduce potential blood loss, accelerate clot detection, and optimize thrombus removal.

5. As a research and development organization devoted to advancing thrombectomy and aspiration monitoring technologies, Incuvate developed these inventions through years of significant inventive effort.

6. The functionality provided by Penumbra's THUNDERBOLT system rests squarely on these very inventions. The Accused Products feature a housing containing a pressure sensor coupled to a microprocessor, which compares measured pressure deviations against pre-set thresholds and, in response, drives LED-based visual signals and audible cues that indicate to the user whether the catheter tip is engaged with thrombus, in patent flow, or in a clog condition.

7. Penumbra has reaped and stands to reap enormous commercial benefits by using, and inducing others to use, Incuvate's patented inventions without license or compensation. Penumbra markets the Accused Products as a revolutionary "Computer Assisted Vacuum Thrombectomy" (CAVT) platform and prominently touts the same algorithmic aspiration control disclosed and claimed in the Asserted Patents, featuring proprietary computerized algorithms designed to detect clot, fatigue it, and automatically modulate vacuum flow.

8. Through this lawsuit, Incuvate seeks to hold Penumbra accountable for its unauthorized and willful infringement of the groundbreaking technologies and inventions embodied by the Asserted Patents.

## PARTIES

9. Plaintiff Incuvate, LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 17171 Daimler Street,[1] Irvine, California 92614. Incuvate is recognized as a leading medical device incubator and developer, working with innovators to design,

[1] Sometimes incorrectly stated as 17171 Daimler Avenue.

prototype, and manufacture interventional and interventional inter-vascular technologies, including intelligent aspiration and monitoring systems.

10. Defendant Penumbra, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its corporate headquarters and principal place of business at 1310 Harbor Bay Parkway, Alameda, California 94502. Penumbra designs, develops, tests, manufactures, and distributes medical devices, including the accused THUNDERBOLT system, from and within this District to customers throughout the United States.

## JURISDICTION AND VENUE

11. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Incuvate is the sole legal owner and assignee of the Asserted Patents, holding all right, title, and interest required to file this case.

12. This Court has personal jurisdiction over Penumbra in this action because Penumbra maintains its corporate headquarters and principal place of business within this District, has committed acts of infringement within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Penumbra, directly and/or through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, making, using, offering to sell, selling, and/or importing the accused THUNDERBOLT system.

13. Venue is proper in this District under 28 U.S.C. § 1400(b). Penumbra resides in this District for purposes of 28 U.S.C. § 1400(b) because it maintains its corporate headquarters and principal place of business at 1310 Harbor Bay Parkway, Alameda, California 94502, which is a regular and established place of business in this District. Upon information and belief, Penumbra researches, designs, develops, tests, and manufactures the Accused Products at facilities within this District, and

markets and distributes the Accused Products from this District to customers throughout the United States.

## FACTUAL ALLEGATIONS

### ***Incuvate's Pioneering Technology***

14. Well prior to the filing of the Asserted Patents, aspiration thrombectomy procedures suffered from a severe lack of real-time operational feedback. Clinicians had no automated, real-time mechanism to monitor conditions at the catheter tip, differentiate between active clot ingestion and patent blood flow, or quickly detect clogs.

15. In response to these clinical limitations, Incuvate's founders developed groundbreaking systems and methods that utilize fluid pressure sensors, microprocessors, stored algorithms, and multi-state visual and audible communication cues. By monitoring real-time pressure deviations and comparing them to pre-set thresholds, Incuvate's systems can distinguish between patent blood flow (which exhibits stable, static pressures) and active clot ingestion (which registers a characteristic pressure deviation comprising a plurality of pressure increases and decreases, or baseline vs. peak vacuum differentials). These breakthroughs allow the system to automatically control aspiration states (switching between continuous and modulated/intermittent aspiration) and directly communicate system status—such as "Ready," "Aspirating Thrombus," "Clog Condition," or "System Leak"—to the operating clinician.

16. These pioneering developments enabled feedback-driven aspiration: the system can switch between continuous, intermittent, and algorithmically-controlled aspiration based on real-time conditions detected at the catheter tip, allowing operators to focus on the patient while the system continuously monitors and adjusts.

***The Asserted Patents***

17. On February 2, 2016, the USPTO duly and legally issued United States Patent No. 9,248,221, entitled "Aspiration monitoring system and method" to inventors David M. Look and Bradley S. Culbert. A copy of the '221 Patent is attached as **Exhibit 1**. The '221 Patent is assigned to Incuvate. The '221 Patent claims priority to U.S. Provisional Patent Application No. 61/976,975, dated April 8, 2014.

18. On February 20, 2018, the USPTO duly and legally issued United States Patent No. 9,895,473, entitled "Aspiration monitoring system and method" to inventors David M. Look and Bradley S. Culbert. A copy of the '473 Patent is attached as **Exhibit 2**. The '473 Patent is a continuation of the '221 Patent and is assigned to Incuvate.

19. On March 31, 2020, the USPTO duly and legally issued United States Patent No. 10,603,415, entitled "Aspiration monitoring system and method" to inventors David M. Look and Bradley S. Culbert. A copy of the '415 Patent is attached as **Exhibit 3**. The '415 Patent is a continuation of the '473 Patent and is assigned to Incuvate.

20. On June 20, 2023, the USPTO duly and legally issued United States Patent No. 11,678,896, entitled "Aspiration monitoring system and method" to inventors David M. Look and Bradley S. Culbert. A copy of the '896 Patent is attached as **Exhibit 4**. The '896 Patent is a continuation of the '415 Patent and is assigned to Incuvate.

21. On February 3, 2026, the USPTO duly and legally issued United States Patent No. 12,539,127, entitled "Aspiration monitoring system and method" to inventors David M. Look and Bradley S. Culbert. A copy of the '127 Patent is attached as **Exhibit 5**. The '127 Patent is a continuation of the '896 Patent and is assigned to Incuvate.

22. Each of the Asserted Patents is valid and enforceable.

***<u>The Accused Thunderbolt System</u>***

23. Penumbra's THUNDERBOLT system is a Computer Assisted Vacuum Thrombectomy (CAVT) platform indicated for neurovascular applications, specifically for neuro thrombectomy in acute ischemic stroke patients suffering from emergent large vessel occlusion.

24. The THUNDERBOLT system comprises several components, including, but not limited to, the Penumbra ENGINE vacuum source, the THUNDERBOLT tubing/module, and associated RED Reperfusion Catheters (including the RED 62, RED 68, RED 72, RED 72 Silver Label, and RED 72 Silver Label with "SENDit" technology).








25. The THUNDERBOLT tubing/module comprises a housing through which an elongate aspiration passage (the tubing) extends and terminates in an orifice that couples to the vacuum source (the collection canister on the Penumbra ENGINE). Penumbra's own marketing materials, "Instructions for Use" manuals, and public disclosures confirm the presence of a pressure sensor, a microprocessor, and a stored thrombus-removal/modulated aspiration algorithm that compares measured pressure deviations against pre-set thresholds and differential values.

26. Penumbra markets the THUNDERBOLT system as offering computer-assisted "modulated aspiration" powered by advanced algorithms designed to detect clot, fatigue it, and completely ingest it while providing streamlined audio-visual cues to the operating clinician.




27. On June 30, 2026, the United States Patent and Trademark Office issued U.S. Patent No. 12,667,376 (the "'376 Patent") to Penumbra, titled "Aspiration monitoring system and method" and listing Penumbra engineers as

inventors. A copy of the ’376 Patent is attached as **Exhibit 6**. The ’376 Patent expressly describes the internal operations, mathematical formulas, and algorithmic processes of Penumbra’s CAVT and THUNDERBOLT systems.

28. Based on the ’376 Patent’s disclosures, Penumbra's automated clot-detection and modulated aspiration systems evaluate real-time fluid pressure by comparing measured pressure values to stored thresholds and pre-set differentials. Specifically, the ’376 Patent discloses that “the algorithm continually takes instantaneous pressure differential readings and compares them to the max and min pressure differentials collected throughout the procedure.” The ’376 Patent further discloses that the system’s microprocessor utilizes a “windowing algorithm . . . to establish local minimum and local maximum pressure sensor readings,” and that “these windowed minimums and maximums are compared to a global maximum and global minimum across the data set” in order to make “determinations of a catheter's state.”

29. The ’376 Patent also discloses that Penumbra’s CAVT systems generate user-facing alerts and notifications when measured conditions exceed stored, pre-set thresholds. For example, the ‘’376 Patent discloses that “an escalation feature may be used wherein an Escalate Count of consecutive determinations of identical system state is maintained by the controller, and specific action may be taken if the count exceeds a threshold . . . such as a user notification.”

30. In summary, Penumbra’s CAVT and THUNDERBOLT systems operate by storing pre-set thresholds and pressure differentials in memory, measuring real-time deviations in fluid pressure, comparing those deviations to the stored references, and generating visual and audible alerts based on those comparisons, just as claimed in the Asserted Patents.

/ / /

/ / /

/ / /

***Penumbra's Prior Technology Knowledge and Willful Infringement***

31. Penumbra has long been aware of Incuvate's underlying technology, pending patent applications, and each of the Asserted Patents. As such, Penumbra's infringement of the Asserted Patents has been and continues to be willful both before and after this suit was filed.

32. Penumbra has been aware of Incuvate's underlying technology since at least May 2016, when inventors of the technology, including current Incuvate personnel, met with Penumbra under a mutual non-disclosure agreement to discuss the very technology now embodied in the Asserted Patents. That meeting included, among others, Daniel Davis (then Penumbra's President, North America), Daniel Wilson (then Penumbra's Director & Head of Business Development), Ben Tompkins (then Penumbra's VP of R&D), and Ben Tompkins (then Penumbra's Head of Vascular Thrombectomy). At and following that meeting, Penumbra was also made aware of Incuvate's then-pending patent applications directed to the disclosed technology, including the parent applications to which the Asserted Patents claim priority.

33. Notwithstanding its technical disclosure meeting under the mutual NDA, Penumbra subsequently developed and launched its "Computer Assisted Vacuum Thrombectomy" (CAVT) systems, embodying the identical pressure sensor, microprocessor, and algorithmic alert-feedback architecture disclosed by Incuvate.

34. Penumbra has had actual notice of the Asserted Patents since at least May 28, 2026, when Incuvate sent William Yee, Senior Director of Intellectual Property Strategy at Penumbra, a formal notice letter identifying the Asserted Patents and describing the bases for Penumbra's infringement in connection with its CAVT technologies.

/ / /

/ / /

35. On June 11, 2026, Penumbra announced that it had received U.S. FDA clearance for its THUNDERBOLT system, extending its computer-assisted, algorithm-driven CAVT technology directly into the neurovascular stroke space.

36. Incuvate subsequently sent a supplemental notice specifically identifying the newly cleared THUNDERBOLT system on August 7, 2026. This letter detailed how the THUNDERBOLT system—including the Penumbra ENGINE and RED catheters—directly infringes the claims of the Asserted Patents.

37. Notwithstanding Incuvate's pre-suit notices and offers to engage in good-faith licensing, Penumbra has continued, and continues to this day, to manufacture, use, sell, offer for sale, and/or import the THUNDERBOLT system in the United States without seeking a license or taking corrective action. Penumbra's continued conduct constitutes willful infringement, warranting enhanced damages under 35 U.S.C. § 284.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 9,248,221

## (Direct Infringement under 35 U.S.C. § 271(a) and Induced Infringement under 35 U.S.C. § 271(b))

38. Incuvate realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

39. Penumbra has infringed and continues to infringe, literally and/or under the doctrine of equivalents, at least Claim 5 of the '221 Patent under 35 U.S.C. § 271.

Claim 5 of the '221 Patent recites:

> [preamble] A self-contained monitoring device for real time monitoring of catheter aspiration, configured for removable connection in between an aspiration catheter and a vacuum source, comprising:
>
> [a] a housing having a first port adapted for detachable connection to a vacuum source and a second port adapted for detachable connection with an aspiration catheter;

> [b] a pressure sensor in fluid communication with an interior of the housing;
>
> [c] a measurement device coupled to the pressure sensor and configured for measuring deviations in fluid pressure; and
>
> [d] a communication device coupled to the measurement device and configured to generate an alert signal when a deviation in fluid pressure measured by the measurement device exceeds a pre-set threshold, wherein the communication device is configured to generate a first type of alert in response to a deviation measured by the measurement device comprising a plurality of increases and decreases of vacuum pressure, and wherein the communication device is configured to generate a second type of alert in response to the deviation comprising a plurality of increases and decreases of vacuum pressure no longer being measured by the measurement device.

40. The accused THUNDERBOLT system is a self-contained monitoring device configured for real-time monitoring of catheter aspiration, designed to be connected in line between an aspiration catheter (RED Reperfusion Catheters) and a vacuum source (Penumbra ENGINE).

41. The THUNDERBOLT tubing assembly includes a housing (including its specialized connector module) that features a first port for detachable connection to the Penumbra ENGINE vacuum source, and a second port for detachable connection to the proximal hub of the RED catheter.

42. The THUNDERBOLT housing carries a pressure sensor that is in fluid communication with the interior of the housing, enabling it to measure pressure within the fluid passage. This configuration is necessary to register real-time vacuum pressure deviations as aspirated stroke clots and blood transit from the catheter.

43. The THUNDERBOLT system incorporates a measurement device, in the form of a built-in microprocessor, coupled to the pressure sensor and configured to measure deviations in fluid pressure. The microprocessor executes computerized

algorithms that measure instantaneous pressure deviations to differentiate between patent flow and thrombus ingestion.

44. The THUNDERBOLT system includes a communication device (comprising LED-based visual status indicators on its display interface/console and audible alarms or valve-click sound generators) coupled to the microprocessor. Consistent with the patented limitations, the system is configured to generate a first type of alert when the microprocessor measures pressure deviations comprising a plurality of increases and decreases in vacuum pressure indicating active thrombus aspiration (e.g., LED indicators and characteristic aspiration valve control/feedback). It is further configured to generate a second type of alert when that plurality of increases and decreases is no longer measured, indicating a clog or flow cessation (e.g., via LED indicator).

Figure 3: Lightning Bolt Aspiration Tubing Control Panel







45. The THUNDERBOLT system satisfies the specific limitation of Claim 5 by generating alerts comprising at least one of an audible alert (via characteristic audio feedback tones or mechanical clicks) and a visible alert (via colored LED lights on the display).

46. Penumbra directly infringes Claim 5 of the ’221 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing the THUNDERBOLT system in the United States.

47. Penumbra actively induces infringement of Claim 5 of the ’221 Patent under 35 U.S.C. § 271(b). Penumbra provides the THUNDERBOLT system to

clinicians along with product manuals, Instructions for Use, and training videos that instruct and direct clinicians to assemble and operate the system in a manner that practices every limitation of Claim 5. Penumbra does so with actual knowledge of the ’221 Patent, with the specific intent to encourage infringement, and without license or authority from Incuvate.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 9,895,473**

**(Direct Infringement under 35 U.S.C. § 271(a) and Induced Infringement under 35 U.S.C. § 271(b))**

48. Incuvate realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

49. Penumbra has infringed and continues to infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the ’473 Patent under 35 U.S.C. § 271.

Claim 1 of the ’473 Patent recites:

> [preamble] A monitoring device for real time monitoring of catheter aspiration, comprising:
>
> [a] a housing having a first port adapted for connection to a vacuum source;
>
> [b] a pressure sensor in fluid communication with an interior of the housing;
>
> [c] a measurement device coupled to the pressure sensor and configured for measuring deviations in fluid pressure; and
>
> [d] a communication device coupled to the measurement device and configured to generate an alert signal when a deviation in fluid pressure measured by the measurement device exceeds a pre-set threshold, wherein the communication device is configured to generate a first type of alert in response to a deviation measured by the measurement device comprising an increase and decrease of vacuum pressure, wherein the increase and decrease of vacuum pressure comprises a baseline vacuum pressure and a peak vacuum pressure, and wherein the pre-set threshold is compared to a difference between the peak vacuum pressure and the baseline vacuum pressure.

50. The accused THUNDERBOLT system is a monitoring device configured for real-time monitoring of catheter aspiration in stroke thrombectomy procedures.

51. The THUNDERBOLT system includes a tubing housing with a port adapted for connection to the Penumbra ENGINE vacuum source.

52. The THUNDERBOLT system carries a pressure sensor in fluid communication with the interior of the housing to measure real-time vacuum pressure within the fluid line.

53. The THUNDERBOLT system incorporates a measurement device (a built-in microprocessor) coupled to the pressure sensor and configured to measure deviations in fluid pressure.

54. The THUNDERBOLT system incorporates a communication device (the display interface/console LEDs) configured to generate an alert when deviations in fluid pressure exceed a pre-set threshold. In accordance with Claim 1, Penumbra's computerized algorithms are configured to identify a baseline vacuum pressure and a peak vacuum pressure during aspiration, compare the difference between the peak and baseline pressures to a pre-set threshold stored in memory, and generate a first type of alert (e.g., LED procedural indicators) when the measured pressure differential exceeds the pre-set threshold, indicating active thrombus ingestion.

55. Penumbra directly infringes Claim 1 of the ’473 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing the THUNDERBOLT system in the United States.

56. Penumbra actively induces infringement of Claim 1 of the ’473 Patent under 35 U.S.C. § 271(b) by providing instructions, manuals, and training directing operators to set up and use the THUNDERBOLT system, with knowledge of the ’473 Patent and with the specific intent to induce infringement.

/ / /

/ / /

**COUNT III**

**INFRINGEMENT OF U.S. PATENT NO. 10,603,415**

**(Induced Infringement under 35 U.S.C. § 271(b))**

57. Incuvate realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

Claim 1 of the ’415 Patent recites:

> [preamble] A method of monitoring catheter aspiration comprising:
>
> [a] providing a monitoring device comprising:
>
>> [a1] a first sensor configured to be carried on an aspiration catheter having an aspiration lumen, the first sensor further configured to monitor a flow condition related to flow through the aspiration lumen of the aspiration catheter;
>>
>> [a2] a measurement device coupled to the first sensor and configured for measuring deviations output by the first sensor; and
>>
>> [a3] a communication device coupled to the measurement device and configured to generate a first alert when a deviation measured by the measurement device exceeds a pre-set threshold, the first alert indicative of the aspiration status of the system;
>>
>> [a4] inserting an aspiration catheter having a proximal end, a distal end, and an aspiration lumen extending there-between, within the vasculature of a subject;
>>
>> [a5] coupling a first port of a housing to a vacuum source;
>>
>> [a6] aspirating at least blood or thrombus from the vasculature of the subject through the aspiration lumen of the aspiration catheter and a cavity of the housing; and
>>
>> [a7] operating the measurement device to measure at least one deviation output by the first sensor, wherein the communication device in turn generates a first alert when a deviation measured by the measurement device exceeds a pre-set threshold, the first alert indicative of active aspiration.

58. When used as intended by clinicians in the United States, the THUNDERBOLT system is operated to perform every step of the method claimed in Claim 1 of the '415 Patent.

59. Clinical operators using the THUNDERBOLT system perform the step of providing a monitoring device, which includes the specialized THUNDERBOLT housing carrying a pressure sensor configured to monitor a flow condition, a microprocessor (measurement device) configured to measure pressure deviations, and a display/audible cue console (communication device) configured to generate status alerts.

60. Clinical operators perform the step of inserting the aspiration catheter (the RED Reperfusion Catheters) into the neurovasculature of a subject.

61. Clinical operators perform the step of coupling the proximal end of the aspiration lumen (the catheter hub) to a vacuum source (the Penumbra ENGINE via the THUNDERBOLT tubing passage).

62. Clinical operators perform the step of aspirating blood and/or thrombus from the neurovasculature of the subject through the catheter lumen using negative pressure developed by the Penumbra ENGINE.

63. Clinical operators perform the step of operating the measurement device to measure at least one pressure deviation output by the sensor, causing the communication device to generate a first alert (e.g., LEDs and active valve-clicking audio feedback) when the measured pressure deviation exceeds a pre-set threshold, with the alert indicative of active clot aspiration.

64. Penumbra does not directly perform the steps of the patented method under 35 U.S.C. § 271(a) because the method is performed on a patient by clinical operators in the United States.

65. Penumbra actively and intentionally induces infringement of Claim 1 of the '415 Patent under 35 U.S.C. § 271(b). Penumbra manufactures, distributes, and sells the specialized THUNDERBOLT system with the sole purpose of enabling

clinicians to perform the patented method, and provides explicit Instructions for Use, manuals, clinical training, and marketing materials directing and encouraging clinicians to operate the system to perform every step of the claimed method. Penumbra does so with actual knowledge of the '415 Patent, with the specific intent to encourage and facilitate direct infringement, and without license or authority from Incuvate.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 11,678,896

## (Direct Infringement under 35 U.S.C. § 271(a) and Induced Infringement under 35 U.S.C. § 271(b))

66. Incuvate realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

67. Penumbra has infringed and continues to infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the '896 Patent under 35 U.S.C. § 271.

Claim 1 of the '896 Patent recites:

> [preamble] A monitoring device for real time monitoring of catheter aspiration, comprising:
>
> [a] a housing;
>
> [b] an elongate passage extending within the housing and terminating in an orifice configured to be coupled to a vacuum source, the passage configured to by coupled to an aspiration lumen of an aspiration catheter such that aspirated blood can transit through the passage and out the orifice;
>
> [c] a pressure sensor carried by the housing and configured to measure pressure within the passage;
>
> [d] a microprocessor coupled to the pressure sensor and configured for measuring deviations in the measured pressure; and
>
> [e] a light coupled to the microprocessor and configured to generate a visual signal as a result of a determination by

> the microprocessor that a change in the measured pressure conforms with a particular relationship in comparison to a pre-set threshold, wherein the light comprises one or more LED, and wherein the visual signal is different when a value obtained as a result of the pressure sensor is less than the pre-set threshold than it is when the value is greater than the pre-set threshold.

68. The accused THUNDERBOLT tubing and module assembly is a monitoring device configured for real-time monitoring of catheter aspiration in stroke mechanical thrombectomy procedures.

69. The THUNDERBOLT system includes a housing. Penumbra's product photographs and marketing materials show that the specialized THUNDERBOLT aspiration module includes an outer enclosure/housing.

70. The THUNDERBOLT system contains an elongate passage (suction tubing) extending within the housing. The passage terminates in an orifice configured to be coupled to a vacuum source (the collection canister on the Penumbra ENGINE). The proximal end of the passage is configured to couple to the aspiration lumen of the RED catheter so that aspirated blood and clot transit through the passage and out the orifice.

71. The THUNDERBOLT housing carries a pressure sensor configured to measure pressure within the elongate passage.

72. The THUNDERBOLT system incorporates a microprocessor coupled to the pressure sensor and configured to measure deviations in the measured pressure.

73. The THUNDERBOLT system incorporates lights, in the form of LEDs, coupled to the microprocessor and configured to generate a visual signal indicating different statuses. The microprocessor compares real-time pressure deviations against a pre-set threshold stored in memory to determine whether the catheter tip is engaged in clot. A visual LED indicator signals when the catheter tip is engaged in

clot. Additionally, the system has an audible clicking sound from the valves when it goes into clot mode.




74. Penumbra directly infringes Claim 1 of the ’896 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing the THUNDERBOLT system in the United States.

75. Penumbra actively induces infringement of Claim 1 of the ’896 Patent under 35 U.S.C. § 271(b) by providing product manuals and training materials that instruct clinicians to connect, calibrate, and operate the THUNDERBOLT system, with knowledge of the ’896 Patent and with the specific intent to encourage direct infringement.

**COUNT V**

**INFRINGEMENT OF U.S. PATENT NO. 12,539,127**

**(Direct Infringement under 35 U.S.C. § 271(a) and Induced Infringement under 35 U.S.C. § 271(b))**

76. Incuvate realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

77. Penumbra has infringed and continues to infringe, literally and/or under the doctrine of equivalents, at least Claim 11 of the ’127 Patent under 35 U.S.C. § 271.

78. Claim 11 of the ’127 Patent recites:

> [preamble] A monitoring device for real time monitoring of catheter aspiration, comprising:
>
> [a] a housing;
>
> [b] an elongate passage extending within the housing and terminating in an orifice configured to be coupled to a vacuum source, the passage configured to by coupled to an aspiration lumen of an aspiration catheter such that aspirated blood can transit through the passage and out the orifice;
>
> [c] a pressure sensor carried by the housing and configured to measure pressure within the passage;
>
> [d] a microprocessor coupled to the pressure sensor and configured for measuring deviations in the measured pressure;
>
> [e] a memory configured to store a pre-set absolute value pressure difference; and
>
> [f] a light coupled to the microprocessor and configured to generate a visual signal as a result of a determination by the microprocessor that a pressure difference between the measured pressure measured by the pressure sensor and a baseline pressure conforms with a particular relationship in comparison to the pre-set pressure differential.

79. The accused THUNDERBOLT tubing and module assembly is a monitoring device configured for real-time monitoring of catheter aspiration.

80. The THUNDERBOLT system contains a housing.

81. The THUNDERBOLT system contains an elongate passage extending within the housing and terminating in an orifice configured to be coupled to the Penumbra ENGINE vacuum source, with the passage coupled to the RED catheter lumen to permit blood and clot transit.

82. The THUNDERBOLT housing carries a pressure sensor configured to measure pressure within the passage.

83. The THUNDERBOLT system incorporates a microprocessor coupled to the pressure sensor and configured to measure deviations in the measured pressure.

84. The THUNDERBOLT system incorporates a digital memory coupled to the microprocessor and configured to store a pre-set pressure differential or threshold relationship. Executing Penumbra's modulated aspiration stroke algorithms necessarily requires storing pre-set differential parameters in memory against which measured pressure differences are compared. Penumbra's public disclosures, including in its patent applications that post-date the Asserted Patents, confirm that executing the system's modulated aspiration stroke algorithms requires storing pre-set pressure differentials in memory, such as the maximum and minimum pressure differentials collected throughout the procedure, against which instantaneous pressure differential readings are compared.




FIG. 13

85. The THUNDERBOLT system incorporates a light (including its console LED indicators) coupled to the microprocessor. The light is configured to

generate a visual signal when the microprocessor determines that a pressure difference between the measured pressure and a baseline pressure conforms with a particular relationship in comparison to the pre-set pressure differential.

86. Penumbra directly infringes Claim 11 of the ’127 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing the THUNDERBOLT system in the United States.

87. Penumbra actively induces infringement of Claim 11 of the ’127 Patent under 35 U.S.C. § 271(b) by directing and instructing clinicians to use the THUNDERBOLT system, with knowledge of the ’127 Patent and with the specific intent to induce infringement.

## PRAYER FOR RELIEF

WHEREFORE, Incuvate respectfully requests that this Court enter a Judgment and Order against Penumbra as follows:

A. Entering a judgment and declaration against Penumbra and in favor of Incuvate in all respects, including that Penumbra has and will continue to infringe at least one claim of the Asserted Patents;

B. For an order permanently enjoining Penumbra, and its respective officers, directors, agents, servants, employees, attorneys, all parent, subsidiary, and affiliate corporations (including any acquiring or successor entities), and all other individuals acting in concert with them, from making, importing, using, offering for sale, and/or selling the accused THUNDERBOLT system, or otherwise infringing any claim of the Asserted Patents;

C. Alternatively, in the event that an injunction does not issue, that this Court award a compulsory ongoing future royalty;

D. For damages arising from Penumbra’s infringement of the Asserted Patents, including lost profits suffered as a result of Penumbra’s infringement and in an amount not less than a reasonable royalty, together with pre-judgment and post-judgment interest;

E. That this Court declare Penumbra's infringement to be willful and award increased damages in an amount not less than three times the damages assessed for Penumbra's infringement for the period of such willful infringement pursuant to 35 U.S.C. § 284;

F. Entering a judgment that this is an exceptional case and an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G. Awarding Incuvate its costs and expenses; and

H. Granting such other relief as the Court deems just and proper.

**JURY DEMAND**

Incuvate, by and through its undersigned counsel, hereby demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury on all claims so triable in this action.

DATED: August 19, 2026

Ekwan E. Rhow
Timothy B. Yoo
Richard J. Jung
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: *_/s/ Timothy B. Yoo_*
Timothy B. Yoo
Attorneys for Plaintiff Incuvate, LLC